UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| FMC TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 05-376-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| SEQUOIA ENERGY, L.L.C., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court for consideration of FMC Technologies Motion for Partial Summary Judgment. [Record No. 22] Because the Court finds the language of the contract to be ambiguous, partial summary judgment on the issue of consequential damages will be denied. Furthermore, because Kentucky law does allow punitive damages to be recovered in some contract actions, and discovery has not yet closed, partial summary judgment on this issue also will be denied.

**I.   BACKGROUND**

On April 9, 2003, FMC contracted with Sequoia Energy, L.L.C., to upgrade Sequoia's Raw Coal System (the "Phase I contract"). The contract called for FMC to provide system design, engineering and on-site construction at Sequoia's Raw Coal Storage & Reclaim facility in Harlan, Kentucky. The contract was amended in part on April 28, 2003. On June 19, 2003, FMC also contracted with Sequoia to provide system design, engineering and on-site construction for Sequoia's Refuse Conveyor Coal System (the "Phase II contract") in Harlan,

Kentucky. On August 8, 2003, the beltline conveyor of the Raw Coal System collapsed after the system was put into operation.

Following a period of repair by FMC, Sequoia refused to make payments to FMC under the contract. FMC then brought suit in this Court seeking the remainder of the money it alleges it is owed under the terms of the contract. Sequoia filed a counterclaim against FMC seeking damages allegedly caused by delay in the Raw Coal System startup and the alleged failure of the system. Sequoia seeks to recover consequential damages related to a loss of its initial investment, loss of income, loss of anticipated profits and loss for repairs. Additionally, Sequoia seeks punitive damages from FMC.

## II. LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

"Once a moving party has met its burden, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.' " *Keeneland Ass'n, Inc. v.*

*Earnes*, 830 F.Supp. 974, 984 (E.D.Ky. 1993), *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact.  *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415 (6th Cir. 2002).

Once the movant has satisfied this burden, the non-movant must go beyond the assertions made in the pleadings and come forward with specific evidence to demonstrate that there is a genuine issue of material fact.  *Id.*  The nonmoving party cannot rely upon the assertions in its pleadings; rather, that party must come forward with probative evidence, such as sworn affidavits to support its claims.  *Celotex*, at 324.  However, the trial court does not have a duty to search the entire record to establish that it is bereft of any genuine issue of material fact.  *In re Morris*, 260 F.3d 654 (6th Cir. 2002).  Rather, the nonmoving party has an affirmative obligation to direct the court's attention to those specific portions of the record upon which it seeks to rely to create genuine issues of material fact.  *Id.*  In making this determination, the Court must review all the facts and the inferences drawn from those facts in the light most favorable to the nonmoving party.  *Matsushita*, 475 U.S. at 587.

### III.    ANALYSIS

This case comes before the Court on a motion for partial summary judgment.  In effect, FMC is asking this Court to declare that: (1) the terms of the contract between FMC and Sequoia expressly preclude consequential damages; and (2) Kentucky law would preclude punitive damages under the facts presented.

### A. Consequential Damages

The determination of whether the parties contracted to preclude consequential damages is significantly more complicated than is posited by FMC in its motion for partial summary judgment. Before the Court can determine whether the contractual language precludes consequential damages, it must first determine which terms the parties actually agreed to; that is, the Court must decide which parts of the various contracts actually comprise the "agreement".

As a preliminary matter, it is uncontested that Kentucky law permits parties to preclude consequential damages within a contract, subject to certain exceptions, none of which are relevant here. K.R.S. 355.2-719 provides that "consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable". If the contract between FMC and Sequoia contains terms excluding consequential damages, those terms will be enforced, subject to this statutory section.

This is where the agreement between the two parties ends. Normally, a material disagreement between the parties about the facts would be sufficient to defeat summary judgment. However, in the present case, the parties agree on the *relevant* facts. They disagree about the legal conclusions those facts engender. For instance, regarding the Phase I contract, both parties agree that the April 8, 2003, version bears the signatures of Mr. Baird and Mr. Ditty on page 3. Further, both parties agree that an April 28, 2003, version bears both these signatures on page 1 of the agreement.

Thus, the Court can determine and interpret the terms of the contract on summary judgment. Because neither party is challenging the authenticity of the signatures or contracts,

the remaining questions are entirely legal. Specifically, the Court must determine to which terms the parties are legally bound and whether those terms preclude consequential damages.

### 1. Terms of the contract

The parties' primary dispute seems to be over whether the "Terms and Conditions" which comprise pages 4-8 of the Phase I contract and pages 6-10 of the Phase II contract were actually agreed on by the parties. K.R.S. 446.060 provides that "[w]hen the law requires any writing to be signed by a party thereto, it shall not be deemed to be signed unless the signature is subscribed at the end or close of the writing." *Id.* Since both parties agree that none of the contracts or amendments has a signature appearing on the last page, the Court must apply this statute to determine which parts of the contracts can actually be enforced.

Perhaps recognizing the rather harsh outcomes that might result from a strict application of this statute, Kentucky courts have moderated its effect in several ways. In the context of wills and other testaments, in the 1920's Kentucky courts allowed that a signature was operative where the signature was sufficiently near the end of the writing to evidence an intent to be bound by the full writing. *Gentry's Guardian v. Gentry*, 219 Ky. 569 (1927); *see also Lucas v. Brown*, 187 Ky. 502 (1920). In other contexts, however, Kentucky courts more strictly apply the rule. *Rowe v. Ratliff's Heirs*, 225 Ky. 70 (1928) (title bond signed near the beginning of the instrument was not valid).

More recently, Kentucky courts appear to have settled on a compromise position. The text of the statute states that a signature will be invalid unless it is "subscribed at the end or close of the writing". K.R.S. 446.060(1). In *R.C. Durr Co. v. Bennett Indus., Inc.*, 590 S.W.2d 338

(Ky. App. 1979), the Kentucky Court of Appeals endorsed a rule that a signature in the middle of the document adopts all language which appears before it, but excludes any language which comes later in the document. The only exception is where later language is adopted by incorporation. *Hertz Com. Leasing Corp. v. Joseph*, 641 S.W.2d (Ky. App. 1982), *citing Childers & Venters, Inc. v. Sowards*, 460 S.W.2d 343 (1970). Even then, the language incorporating the later language must clearly appear before the signature. *Id.*

This position was reaffirmed in *State St. Bank & Trust Co. v. Heck's Inc.*, 963 S.W.2d 626 (Ky. 1998). The Kentucky Supreme Court interpreted its earlier precedent to conclude that, when a signature appears other than at the end of a writing, only that writing appearing after the signature is invalidated. *Id.*; *citing Consolidated Aluminum Corp. v. Krieger*, 710 S.W.2d 869 (Ky. App. 1986). The court also reaffirmed its holding that additional terms which appear after the signatures may be incorporated by reference. *State St. Bank*, 963 S.W.2d at 629; *citing Bartelt Aviation, Inc. v. Dry Lake Coal Co., Inc.*, 682 S.W.2d 796 (Ky. App. 1985) and *R.C. Durr*, 590 S.W.2d 338.

The "Terms and Conditions" which contain provision 4.1 (and which FMC argues is part of the original April 8th contract) appear after the signature of Ditty. However, an examination of the April 8th contract reveals that Ditty and Baird's signatures appear next to the following language: "Payment Terms as per following Terms & Conditions". [Record No. 24, Ex. 2] Therefore, although Ditty's signature is technically just above this language, the signatures are sufficiently close to the bottom of page 3 to incorporate the entirety of page 3 into the April 8 contract. This is especially true where what appear to be notes spelling out a liquidated damages

clause appears after the signature, but which Sequoia argues are a part of the agreement. [Record No. 24, pg. 2]

Although the "Terms and Conditions" are dated the day before the April 8th contract, the reference to them on page 3 is evidence of the parties' intent to incorporate them into the agreement. More importantly, under Kentucky law, because Ditty's signature appears next to the language incorporating the "Terms and Conditions", they are considered part of the April 8th contract. This conclusion is not altered by the later April 28th contract which Sequoia terms an amendment. [Record No. 24, Ex. 3] Ditty and Baird's signature appears at the bottom of page 1. Therefore, pursuant to K.R.S. 446.060, only the language appearing on page 1 acts as an amendment to the April 8 contract.

Alternatively, the UCC provides that once an agreement has been reached between two parties who are merchants, any additional terms become a part of the contract unless objected to by the other party. K.R.S. 355.2-207. Therefore, even if the April 8th contract did not incorporate the "Terms and Conditions", a failure to object to the April 28th contract would incorporate those terms into the contract. However, because of K.R.S. 446.060, the presence of Ditty's signature on the first page and nowhere else acts as an implicit acceptance to the changes on the first pages and a rejection on all additional pages which may have been exchanged as a part of this amendment.

In summary, the terms of the Phase I contract between FMC and Sequoia consist of page 1 of the April 28th contract, followed by pages 2-8 of the April 8th contract. And while no

conflict appears to have been created by combining the two, if any is later found to exist, the language on page 1 of the April 28th amendment would control.

The analysis of the Phase II contract is slightly more straight-forward. Neither party has submitted any evidence of a later agreement which would modify the June 18th contract. Applying K.R.S. 446.060 to this contract, and noting that the parties signatures appear on page 1, initialed at page 4, the Court concludes that the June 18th contract consists of any language which is not crossed out on pages 1-4. Unlike the April 8th contract, there is no incorporation of the "Terms and Conditions" on these pages. Therefore, the Court must conclude that the "Terms and Conditions" which appear on page 6-10 are not a part of the June 18th contract.

The Court is mindful that, with respect to the June 18th contract, application of K.R.S. 446.060 also serves to eliminate any price term, as it does not appear until page 5. Therefore, while there is no language which might arguably preclude consequential damages, there is also no definite price term. The parties will have to rely on the relevant provisions of the UCC to fill in that gap.

## 2. Effect of Provision 4.1

With respect to the June 18th Phase II contract, the Court has determined that provision 4.1 is not a part of that contract. Neither is there any other language which might preclude Sequoia from seeking consequential damages on that phase. Thus, FMC's motion for summary judgment on consequential damages regarding the Phase II contract will be denied. However, provision 4.1 was incorporated by reference into the April 8th Phase I contract as amended by page 1 of the April 28th agreement. Reduced to its essential terms, this disclaimer provides:

> Seller expressly disclaims any obligation or liability for labor performed in connection with installation of repaired or replaced parts or for any other expense [including consequential damages] . . . arising in connection with the sale or use of, or inability to use, Seller's equipment or products for any purpose, except as herein provided.

[Record No. 24, Ex. 2, pg. 5]

This Court is mindful of the Kentucky rule of contract interpretation which holds that any ambiguities in the language of the contract are to be construed against the drafter. In addition to this rule of contract construction, when addressing motions for summary judgment, the evidence and inferences are to be taken in the light most favorable to the non-moving party. Accordingly, the Court concludes that this language does not operate as a bar to the recovery of consequential damages.

In addition to the disclaimer in provision 4.1, the Phase I contract also contains a handwritten provision for what appears to be a liquidated damages clause. The parties appear to have agreed upon a completion date of July 6, 2003, for the installation of the Raw Coal System. It also appears that they agreed upon a three-day grace period, after which (beginning July 9) FMC would have to pay liquidated damages of 1% of the total per day. The assumption would be that it was 1% of the total cost, but the language of the handwritten addition is vague.

Parties typically contract for liquidated damages when another measure of damages would be either too uncertain or difficult to calculate. When parties have contracted for a liquidated damages clause, it is almost always in place of actual damages. *United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34 (2d Cir. 2004), *but see Trans World Airlines v. Travelers Indemnity Co.*, 262 F.2d 321 (8th Cir. 1959). In some instances, the parties may

intend a liquidated damages clause to preclude recovery of both actual and consequential damages. *Vanderbilt Univ. v. DiNardo*, 174 F.3d 751, 755 (6th Cir. 1999). However, as neither party has addressed the issue of whether the liquidated damages in the Phase I contract precludes recovery of other types of damages, the Court will not address it here.

### B. Punitive Damages

Punitive damages are not ordinarily recoverable in an action for breach of contract. *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 360 (Ky. App. 1978), *citing General Accident Fire & Life Assurance Corp. v. Judd*, 400 S.W.2d 685 (Ky. 1966). In Kentucky, simple negligence which causes the breach of contract is insufficient. *Louisville Bear Safety Serv. v. S. Cent. Bell Tel. Co.*, 571 S.W.2d 438 (Ky. App. 1978). For a party to recover punitive damages, Kentucky courts essentially require the finding of a separate tort, usually the breach of contract by tortious conduct. *Ford Motor Co. v. Mayes*, 575 S.W.2d 480, 486 (Ky. App. 1978).

Punitive damages are recoverable only where "the defendant has acted wantonly, or recklessly, or oppressively, or with malice as implies a spirit of mischief or criminal indifference to civil obligations." *Wahba*, 573 S.W.2d at 360, *citing Louisville & Nashville Railroad Co. v. Jones Adm'r*, 297 Ky. 528 (1944); *Bisset v. Goss*, 481 S.W.2d 71 (Ky. 1972). Kentucky courts endorse the Restatement 2nd of Torts § 908(2) for the rule that "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 52 (Ky. 2003).

In contrast to FMC's argument, "'evil motive' and 'reckless indifference to the rights of others' are considered as synonymous." *Id.* "Malice may be implied from outrageous conduct, and need not be express so long as the conduct is sufficient to evidence conscious wrongdoing." *Id. quoting Fowler v. Mantooth*, 683 S.W.2d 250 (Ky. 1984). Similarly, gross negligence is defined as "wanton or reckless disregard for the safety of other persons." *Phelps*, 103 S.W.3d at 52. For Sequoia to recover punitive damages, it would not have to show that FMC acted with express malice. It would be enough that FMC's conduct was so outrageous that malice could be implied from the facts of the situation. *Id*.

As Sequoia argues, this portion of the motion for summary judgment is more in the nature of a Rule 12(b)(6) motion to dismiss for failure to state a claim. FMC is alleging that Sequoia cannot show any set of facts which would allow it to recover punitive damages on this contract. Having determined that there are circumstances under Kentucky law by which Sequoia might be able to recover punitive damages for a breach, summary judgment is inappropriate at this time.

**IV.  CONCLUSION**

For the reasons discussed herein, it is **ORDERED** that FMC Technology's Motion for Partial Summary Judgment is **DENIED**. [Record No. 22]

This 28th day of March, 2006.



Signed By:
*Danny C. Reeves* DCR
United States District Judge