UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| FMC TECHNOLOGIES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 05-376-DCR |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| SEQUOIA ENERGY, L.L.C., | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** *** *** ***

This matter is pending for consideration of Third Party Defendant Pacific Central Steel Fabrication, Inc.'s motion to compel arbitration and stay the proceedings. [Record No. 49] Because the Court finds that the Third Party Plaintiff and Third Party Defendant are bound by the subcontract agreements which contain a valid and enforceable arbitration clause, the Third Party Defendant's motion will be granted. Likewise, the Court will stay the proceedings with respect to the Third Party Defendant until such time that the Third Party Plaintiff and Third Party Defendant have arbitrated their claims.

**I.     RELEVANT FACTS**

This action arises out of the parties' involvement in a construction project at Sequoia Energy, L.L.C.'s mining facilities in Harlan, Kentucky. Plaintiff FMC Technologies, Inc., ("FMC") filed this action alleging breach of contract and seeking monetary damages from Defendant Sequoia Energy, L.L.C. ("Sequoia"). Sequoia counterclaimed alleging negligence and breach of express and implied warranties. Several months later, Plaintiff FMC sought and

-1-

obtained permission to file a third party complaint against Third Party Defendants Pacific Central Steel Fabrication, Inc. ("Pacific") and Colony Insurance for breach of contract and for contractual and common law indemnification and contribution.

On May 26, 2006, Third Party Defendant Pacific filed a motion to compel arbitration and to stay the proceedings against it in this Court. The Third Party Defendant contends that it had a contract with FMC and that its contractual relationship is governed by the Subcontract Agreements which explicitly provide for arbitration of "any dispute under this agreement." [Record No. 49, p. 2]

**II.     ANALYSIS**

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate in a contract involving transactions in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA embodies "the strong federal policy in favor of enforcing arbitration agreements." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985). The FAA was enacted to provide for enforcement of privately entered agreements to arbitrate. *See Mastrobuono v. Shearson Lehman Hutton, Inc*., 514 U.S. 52, 57 (1995) (noting that the central purpose of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms"); *see also Ferro Corp. v. Garrison Indus., Inc*., 142 F.3d 926, 932 (6th Cir. 1998) (noting that the FAA was necessary in order "to overcome judicial reluctance to allow arbitration" as a means of deciding certain cases).

"There is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-77 (6th Cir. 2003) (*quoting AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650, 89 L. Ed. 2d 648, 106 S. Ct. 1415 (1986)).  The Supreme Court has recognized only two limitations on the enforceability of arbitration agreements subject to the FAA: (1) they must be a part of either a maritime contract or a contract dealing with interstate commerce; and (2) arbitration agreements may be revoked "upon grounds as exist at law or in equity for the revocation of any contract." *Ferro*, 142 F.3d at 932 (citing *Southland Corp. v. Keating*, 465 U.S. 1, 11 (1984)).  Further, the Supreme Court has held that "nothing in the act indicat[es] that the broad principle of enforceability is subject to any additional limitations under State law." *Southland*, 465 U.S. at 11.

When ruling on a motion to compel arbitration under a contract, courts must examine the language of the arbitration clause in light of the strong federal policy in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *Arnold v. Arnold Corp.–Printed Commc'ns for Bus.*, 920 F.2d 1269, 1281 (6th Cir. 1990).  The Sixth Circuit has held that, in determining whether to enforce an arbitration agreement under the FAA, a court must "engage in a limited review to determine whether the dispute is arbitrable." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).  First, it must determine whether the parties agreed to arbitrate and whether the dispute falls within the scope of that agreement. *Id*.

Next, if federal statutory claims are asserted, the court must consider whether Congress intended those claims to be nonarbitrable and if it concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citing *Compuserve, Inc. v. Vigny Int'l Finance, Ltd.*, 760 F. Supp. 1273, 1278 (S.D. Ohio 1990)). "As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

The FAA, 9 U.S.C. § 1, *et seq.,* provides that civil actions that are subject to a mandatory arbitration clause between the parties shall be stayed on the application of one of the parties until arbitration proceedings are completed in accordance with the terms of the parties' agreement. 9 U.S.C. § 3. The statutory provision does not give district courts discretion in issuing a stay of the civil action. Instead, it divests the court of discretion and compels arbitration of arbitrable claims. *Byrd*, 470 U.S. at 218 ("the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.")

In the present case, the relevant consideration is whether the current dispute falls within the scope of FMC's agreement to arbitrate claims arising under the contract between FMC and Pacific. FMC sued Sequoia for breach of contract and nonpayment under FMC's contract with Sequoia for Phase II of the Sequoia Project. Sequoia counterclaimed against FMC for negligence and breach of express and implied warranties under FMC's contracts with Sequoia

for Phase I and Phase II of the Sequoia Project. FMC joined Pacific as a third party defendant for breach of contract, contractual indemnification and contribution, and common law indemnification and contribution. FMC alleges that Pacific "failed to perform its obligations of the subcontract agreement" between Pacific and FMC, and that FMC sustained and continues to sustain damages as a result of this breach [Record No. 35, p. 4]. FMC further alleges that it is entitled to be contractually indemnified by Pacific and that Pacific is the primary cause of Sequoia's alleged damages.

With respect to Pacific's motion, it asserts that FMC and Pacific entered into two subcontract agreements for Phase I and II with identical arbitration language. The arbitration provision at issue is contained in the Resolution of Disputes section of the subcontract agreements. Specifically, the arbitration clause states

> General contractor and Subcontractor agree to use their best efforts in good faith to resolve amicably any dispute that may arise relating to this agreement.
>
> Before either party resorts to judicial remedies to solve any dispute under this agreement, the matter shall be referred to the manager of each party, mediation and as a result and as a last resort binding arbitration. The two parties shall personally confer in an effort to resolve the matter first, if possible.

[Record No. 49, Exhibit 1, p. 15]. FMC and Pacific have previously entered into arbitration pursuant to the subcontract agreements to resolve a suit filed by Pacific against FMC in Utah state court for nonpayment. FMC moved to compel arbitration in that case.

However, FMC objects to Pacific's Motion to Compel Arbitration here. FMC argues that the current dispute arises out of the contract between FMC and Sequoia and that the arbitration clause contained in the subcontract agreements does not apply to this dispute. In short, FMC has

not challenged the validity of the subcontract agreements, just the scope of those agreements in the present case. It contends that the third party claim against Pacific is made pursuant to the Sequoia contract "and not as a result of a dispute arising out of the subcontracts" between FMC and Pacific. [Record No. 55, p. 4]

The subcontract agreements provide for arbitration of "any dispute under this agreement" [Record No. 49, p. 2]. "Where, as here, the arbitration clause is broad, 'only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators.'" *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624 (6th Cir. 2004) (*quoting Highlands*, 350 F.3d at 577). In the present case, the subcontract agreements broadly cover any dispute relating to the agreements, and FMC's third party claim against Pacific is based on the performance and contractual indemnification pursuant to these agreements. Moreover, FMC specifically alleges breach of the subcontract in its Amended Third Party Complaint against Pacific [Record No. 35, p. 4] ("Sequoia has asserted claims against FMCTI in relation to the system's collapse. PCS failed to perform its obligations of the subcontract agreement between PCS and FMCTI. As a direct and proximate result of this breach, FMCTI has sustained and continues to sustain damages.")

FMC also alleges contractual indemnification and contribution against Pacific as a result of the alleged damages sustained by Sequoia on Phase I and Phase II of the Sequoia Project. However, Pacific's work on the project was performed pursuant to the subcontract agreements and FMC compelled Pacific to submit to arbitration in a related state court case. FMC and

Pacific have already paid the fees and begun discovery in the arbitration proceeding pursuant to the state court action. Additionally, in its Amended and Supplemental Notice and Demand for Arbitration and Brief Statement of Claims, FMC specifically includes a demand for defense, contribution, and indemnity from Pacific for Sequoia's claims against FMC for Phase I and II [Record No. 64, Exhibit B, p. 2,4]. FMC further agreed in the Stipulation for Arbitration and Selection of Arbitrator "to give up any rights [it] might possess to have this matter litigated in a court or jury trial" [Record No. 64, p. 2]. Thus, although the claim by Sequoia against FMC arises out of a separate contract, FMC's claim against Pacific is a dispute relating to the subcontract agreements and it is clear that FMC and Pacific intended to submit disputes relating to the subcontract agreements to arbitration.

Finally, FMC argues that the interests of judicial economy and equity require joinder of Pacific in the litigation between Sequoia and FMC. FMC claims that "[w]ithout joinder of PCS, there is a danger that the separate litigation and arbitration will yield inconsistent results" [Record No. 55, p. 5]. However, FMC also notes that it will not be completely without judicial remedies in the event of such inconsistent results. In light of the strong federal policy favoring arbitration and FMC's reliance on the arbitration clauses in related proceedings, it is clear that FMC intended to submit claims relating to the subcontract agreements to arbitration.

### III.   CONCLUSION

The present dispute between FMC and Pacific is within the scope of the subcontract agreements. Further, the parties intended that any disputes arising out of their agreements would be arbitrated. Accordingly, it is hereby

**ORDERED** that the Third Party Defendant Pacific's Motion to Compel Arbitration and stay the proceedings with respect to Third Party Complaint against Pacific [Record No. 35] is **GRANTED**.

This 31st day of August, 2006.



Signed By:
*Danny C. Reeves* DCR
United States District Judge